## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

## INTRODUCTION

I, Tucker J. Heap, having been first duly sworn, do hereby depose and state as follows:

1.      I have been employed as a special agent of the FBI for approximately 10 years. I am assigned to the Boston Division's Child Exploitation Task Force.  While employed by the FBI, I have investigated federal criminal violations related to, among other things, the online sexual exploitation of children.  I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

2.      I submit this Affidavit in support of a criminal complaint charging Curtis Simoneau, of 72 Nicholas Street, Apartment 62, Framingham, Massachusetts, with  possession of child pornography, in violation of 10 U.S.C. § 2252A(a)(5)(B), and sexual exploitation of children, in violation of 18 U.S.C. § 2251.

3.      The statements contained in this affidavit are based in part on  information provided by FBI Special Agents, written reports about this and other investigations that I have indirectly or directly received from other law enforcement agents, information gathered from the service of grand jury and administrative subpoenas, the results of physical and electronic surveillance conducted by law enforcement agents, independent investigation and analysis by FBI agents/analysts, and my experience, training and background as a special agent with the FBI. Because this affidavit is submitted for the limited purpose of securing authorization for the requested criminal complaint, I have not included each and every fact known to me concerning this investigation.  Instead, I have set forth only the facts that I believe are necessary to establish the necessary probable cause for the requested criminal complaint.

## PRIOR SEARCH WARRANT

4.      On May 26, 2016, Magistrate Judge Jennifer C. Boal authorized a search and seizure

warrant for 72 Nicholas Street, Apartment 62, Framingham, Massachusetts. I did not execute the warrant because surveillance did not observe Simoneau's blue Jeep Cherokee at 72 Nicholas Street, Apartment 62, Framingham, Massachusetts after May 26, 2016. I later learned Simoneau's registration for the blue Jeep Cherokee had been revoked by the Massachusetts Registry of Motor Vehicles (hereinafter "RMV").

5.     On June 13, 2016, I queried the Massachusetts RMV regarding vehicles registered to Simoneau. The Massachusetts RMV showed that Simoneau had registered a 2014 red Hyundai Elantra, Massachusetts license plate 5TW721, on May 20, 2016. The registration listed a mailing address of 72 Nicholas Street, Apartment 62, Framingham, Massachusetts.

6.     On June 14, 2016, Detective David Loureiro, of the Framingham Police Department (FPD) in Framingham, Massachusetts, observed the red Hyundai Elantra, Massachusetts license plate 5TW721, parked in the lot of the 72 Nicholas Street, Apartment 62, Framingham, Massachusetts.

7.     On July 27, 2016, Detective James Lyman, of the Auburn Police Department ("hereinafter APD") in Auburn, Massachusetts, spoke with Simoneau via telephone number 774-999-9288, which is the same number Simoneau used to contact the victim. Simoneau told Detective Lyman he was living at 72 Nicholas Street, Apartment 62, Framingham, Massachusetts with his mother to assist her with existing medical conditions.

## BACKGROUND OF INVESTIGATION

8.     On March 7, 2016, Detective (Det.) Ralph LeBlanc, of the Westminster Police Department (WPD) in Westminster, Massachusetts (MA), received a complaint regarding the possible sexual exploitation of a 13-year-old boy (hereinafter "victim"). Detective LeBlanc met with the parents and the victim. The victim said he began communicating with "Lauren James" (hereinafter "James") via KiK Messenger in December 2015.

9. James said she was 14-years-old and lived in Maine. After a short period, James offered to exchange nude images with the victim. The victim and James exchanged nude images of themselves on multiple occasions. James then suggested that they exchange nude videos of themselves, which they did. The victim told Det. LeBlanc that he thought he was in an online relationship with James. The victim said he communicated with James only on his iPhone via the following KiK Messenger accounts: "lauren.james2001" and "l.james01." KiK Messenger is an instant messenger application for mobile devices. The application uses a smartphone's data plan or wireless internet connection to transmit and receive messages, photos, videos and other content under a registered account.

10. Eventually, James introduced the victim to her cousin, Curtis Simoneau, (hereinafter "Simoneau") who lived in Massachusetts. The victim said he communicated with Simoneau via iMessage, Instagram and over the telephone. The victim showed Det. LeBlanc Simoneau's contact information on his iPhone, which was listed as "Cool Dude." The telephone number was 774-999-9288. Det. LeBlanc reviewed the text message exchanges the victim had with Simoneau. Simoneau stated he was "bi" and asked the victim if he had any friends who were homosexual. He also offered pornography to the victim.

11. Det. LeBlanc conducted a query of Simoneau's criminal history. Simoneau was convicted of possession of child pornography in September 2011 in a Massachusetts state court. The judge placed him on probation.

12. Det. LeBlanc also reviewed the nude images and videos the victim sent to James, which Det. LeBlanc found in the "Recently Deleted" folder in the "Photos" application on the victim's iPhone. The parents of the victim provided consent to Det. LeBlanc to seize and search the victim's iPhone. At the conclusion of the interview, Det. Leblanc powered down the iPhone and submitted it to evidence.

13.     On April 6, 2016, I met with Det. LeBlanc. Det. LeBlanc provided me with the victim's iPhone 6, serial number F17PWUBUG5MC, and stated the nude images and videos were located in the "Recently Deleted" folder in the "Photos" application. I attempted to locate the images and videos, but observed that they were not present in the "Recently Deleted" folder.

14.     I asked Det. LeBlanc if he had attempted to move the images and videos out of the "Recently Deleted" folder in order to preserve evidence. Det. LeBlanc stated he did not. In my training and experience, the operating systems on computer devices remove any content moved to the "Deleted" or "Trash" folder after a set period of time. I believe that the iPhone's operating system removed the nude images and videos of the victim after Det. LeBlanc powered down the device and held it in evidence.

15.     On April 8, 2016, SA Stephen J. Kelleher, FBI, conducted an evidence extraction of the victim's iPhone file system utilizing a Cellebrite UFED Touch, which is utilized by law enforcement agencies to download the content of mobile devices. SA Kelleher downloaded the results onto a CD. SA Kelleher submitted the original CD into evidence and provided a copy of the results to me.

16.     On April 20, 2016, I reviewed the contents of the file system extraction. I found the following three videos:

   a.   "827679cf-3f65-4357-ac29-142a376d4c98"

   b.   "b76a44c6-d2ab-4f01-be05-05bcb44d7c2f"

   c.   "dfd63907-a2cb-416c-bd58-48f0685f12c9"

17.     "827679cf-3f65-4357-ac29-142a376d4c98" depicts an adolescent male touching his nude buttocks and fondling his penis. "b76a44c6-d2ab-4f01-be05-05bcb44d7c2f" depicts an adolescent male fondling his penis. "dfd63907-a2cb-416c-bd58-48f0685f12c9" depicts an adolescent male masturbating until ejaculation. Based on my training and experience, I believe

4

all three of the videos are child pornography.

18.     On April 21, 2016, the FBI conducted a child forensic interview of the victim, wherein the victim confirmed he was the adolescent male in all three videos. He also confirmed he sent all three videos to James' KiK accounts.

### IDENTIFICATION OF SIMONEAU AS USER OF KIK ACCOUNT

19.     On April 6, 2016, the FBI served KiK Interactive, Inc., with a grand jury subpoena that requested subscriber records and internet protocol (I.P.) logs for the following accounts: "lauren.james2001" and "l.james01." I reviewed the return provided by the company and found the account "l.james01" listed the user's e-mail account as "lauren.james2001@icloud.com." The account for "lauren.james2001" listed the user's e-mail account as "csimoneau2014@yahoo.com."

20.     I also reviewed the contents of the victim's text exchanges located in the KiK application on his iPhone. On March 12, 2016, at 6:53 a.m. Eastern Standard Time (EST), the victim received an image from the "l.james01" KiK account. The image appeared to be a "selfie" of a teenage female. The image was followed by two text messages, which read "Took it today" and "I'll stop talking to you just wanted to send you one last pic of me. Maybe we'll bump into each-other someday. I'll never stop loving you (victim's name) and hope you find someone that makes you as happy as you made me."

21.     KiK's log showed the user accessed the account at 6:46 a.m. EST via the I.P. address 146.115.25.183. The log showed the user accessed the account via the I.P. address 146.115.25.183 each day from March 9, 2016 to March 17, 2016.

22.     On April 17, 2016, the FBI served RCN Telecom Services with an administrative subpoena that requested subscriber information regarding the account that utilized the I.P. address 146.115.25.183 from March 9 to March 11, 2016. The return from the company listed

Maureen Medaglia of 72 Nicholas Street, Apartment 62, Framingham, Massachusetts as the account holder.

23. The FBI conducted a database search of public records regarding Medaglia and Simoneau. The search showed Medaglia and Simoneau listed at the same previous address: 11 Tibbets Street, Apartment 1, Natick, MA. Simoneau's criminal history listed "Maureen Simoneau" as his mother.

24. On April 7, 2016, the FBI served Sprint Corporation with an administrative subpoena that requested subscriber information and toll records regarding telephone number 774-999-9288, which Simoneau used to contact the victim. The return listed Medaglia as the subscriber. Two of the addresses listed on the account were 11 Tibbetts Street, Natick, MA, and the 72 Nicholas Street, Apartment 62, Framingham, Massachusetts.

25. On May 2 and May 9, 2016, I conducted surveillance of 72 Nicholas Street, Apartment 62, Framingham, Massachusetts. I observed a blue Jeep Cherokee, MA license plate 2NL455, parked in the lot of the apartment complex. The MA Registry of Motor Vehicles (RMV) showed the vehicle was registered to Simoneau.

26. Due to my training and experience, I believe Simoneau utilized the Internet service at his mother's residence, 72 Nicholas Street, Apartment 62, Framingham, Massachusetts, to access both of the "Lauren James" KiK accounts to communicate and receive child pornography from the victim. I believe Simoneau posed as James depicting himself as a teenage female on KiK to entice the victim to produce and send him child pornography.

27. On June 24, 2016, Simoneau appeared in Worcester District Court pursuant to a summons after having been charged by criminal complaint with rape of child pursuant to Massachusetts General Law, Chapter 265, Section 23 [statutory rape]. The state judge released Simoneau with electric monitoring. On or about July 28, 2016, the Worcester County District Attorney's Office

notified Simoneau's attorney that the Commonwealth of Massachusetts intended to file a dismissal or a nolle prosequi in the case on Tuesday, August 2, 2016. I have learned that, in fact, the Commonwealth of Massachusetts has filed the nolle prosequi.

## SEARCH WARRANT EXECUTION AND ARREST

28. On August 3, 2016, Magistrate Judge Jennifer C. Boal, District of Massachusetts, authorized a search and seizure warrant for 72 Nicholas Road, Apartment 62, Framingham, Massachusetts.

29. On August 4, 2016, the FBI Boston Child Exploitation Task Force (BCETF) and the Framingham Police Department (FPD) executed the warrant. I knocked on the front door three separate times and requested the residents open the door. An adult male answered me, but he did not open the door. The voice appeared to be getting further away each time he answered my request. I directed agents to breach the door.

30. I entered the apartment and saw Curtis Simoneau, who I recognized from his Massachusetts driver's license photograph, walking towards the open door that led to the balcony. I commanded him stop and raise his hands. He paused momentarily, faced me, raised his hands, then turned and began walking towards the open door to the balcony again. Once Simoneau reached the balcony, he attempted to climb over the railing. Agents and I restrained him before he could climb over the railing and fall six floors to the pavement. As agents restrained him, Simoneau repeatedly yelled "Why didn't you let me do it?" Agents moved him off the balcony and sat him down on the couch in the living room. I repeatedly tried to calm Simoneau down as he repeatedly said "You know why you're here."

31. The remaining agents cleared the rest of the apartment. They encountered Simoneau's mother, Maureen Medaglia, in the bedroom.

32. Shortly thereafter, in the presence of Det. Michael Sullivan, Boston Police Department

(BPD) and a member of the BCETF, I advised Simoneau of his *Miranda* Rights in writing, which he waived in writing. Simoneau stopped the interview twice but after each invocation of his rights, he requested to resume the interview. All three interviews were audio recorded. Each time, before resuming the interview at the request of Simoneau, Detective Sullivan and I reminded Simoneau he had reinitiated contact and was not compelled to make a statement. Simoneau said he met the victim on Kik Messenger while posing as a girl named "Lauren." Simoneau said "the reason why you're here, you're gonna find it on the desktop of that laptop." I asked Simoneau what he expected the agents to find. He said "Videos." I asked Simoneau if the black Lenovo laptop contained videos of the victim. He said "Yes." I asked if there were videos of other victims. He said "Yeah." I asked how many. Simoneau said "I don't know. I don't count." Shortly thereafter, Simoneau advised "he did not want to talk about it anymore" and agents ended the interview.

33. A forensic examiner completed a preliminary review of the black Lenovo laptop, serial number PF0GDJBY, which was made in China. The preliminary review showed a folder titled "Kik" on the desktop of the computer. The "Kik" folder contained two sub-folders titled "2015" and "2016." The forensic examiner advised the sub-folder "2015" contained approximately 95 sub-folders organized by screen names or actual names. The "2015" subfolder contained over 2,000 videos or images. The sub-folder "2016" contained approximately 40 sub-folders organized by screen names or actual names. The "2016" subfolder contained over 1,500 videos or images.

34. The subfolder "2016" contained a subfolder titled "My(victim's first name)." This subfolder contained pictures of the victim, including pictures of the victim's face. I recognized the victim, who I had previously seen in person. The same subfolder titled "My(victim's first name)" contained a number of videos, including the following:

   a.   "IMG_4767.mp4"

   b.   "IMG_8797.mov"

   c.   "IMG_8800.mov"

35. All three videos depict a prepubescent male engaged in masturbation. The uncircumcised penis and clothing is consistent with that of the victim previously identified in paragraph 16. The forensic examination of Simoneau's computer is ongoing.

## CONCLUSION

36. Based on the foregoing, there is probable cause to believe that Curtis Simoneau committed the following two offenses: possession of child pornography, in violation of 10 U.S.C. § 2252A(a)(5)(B), and sexual exploitation of children, in violation of 18 U.S.C. § 2251. I respectfully request that this Court issue the requested criminal complaint.

_____
Special Agent TUCKER J. HEAP
Federal Bureau of Investigation

Sworn and subscribed to before me this 4th day of August, 2016.

_____
JENNIFER C. BOAL
Chief United States Magistrate Judge

I have reviewed the videos referenced in paragraph 34. I find probable cause to believe the images depict a minor engaged in sexually explicit conduct. The Affiant shall preserve the image provided to the Court for the duration of this matter, including any relevant appeal process.

_____
JENNIFER C. BOAL
Chief United States Magistrate Judge